**JENNY L. FOLEY, Ph.D., ESQ.**
Nevada Bar No. 9017
E-mail: jfoley@hkm.com
**HKM EMPLOYMENT ATTORNEYS LLP**
1785 East Sahara, Suite 300
Las Vegas, Nevada 89104
Tel: (702) 805-8340
Fax: (702) 805-8340
*Attorneys for Plaintiff*

UNITED STATES DISTRICT COURT
DISTRICT OF NEVADA

| | |
|---|---|
| TERESA SAWTELLE, an Individual, <br><br> Plaintiff, <br><br> vs. <br><br> CORECIVIC, INC. d/b/a NEVADA SOUTHERN DETENTION CENTER., a Foreign Corporation, DOES I -X; ROE CORPORATIONS I -X. <br><br> Defendants. | CASE NO.: <br><br> **COMPLAINT AND JURY DEMAND** |

The Plaintiff TERESA SAWTELLE ("**Ms. Sawtelle**") by and through her attorneys, Jenny L. Foley, Ph.D., Esq. of HKM Employment Attorneys LLP, hereby complains and alleges as follows:

**JURISDICTION**

1. This is an action for damages brought by Plaintiff for unlawful workplace retaliation under Title VII of the Civil Rights Act of 1964 ("**Title VII**"), 42 U.S.C. §2000e *et seq.*; discrimination and retaliation under the Americans with Disabilities Act ("ADA"), U.S.C. § 12101, et seq.; and for certain claims brought pursuant to the Nevada Revised Statutes as outlined below.

2. This Court has primary jurisdiction over claims set forth herein pursuant to 28

U.S.C. § 1331 (federal question), 28 U.S.C. §1343(a) (4) (civil rights action) and 42 U.S.C. §2000e-5(f)(3) (unlawful discrimination and retaliation in employment). Additionally, this Court has supplemental jurisdiction over any state law claims pled herein pursuant to 28 U.S.C. § 1367.

3.  All material allegations contained in this Complaint are believed to have occurred in Nye County, Nevada. Therefore, venue properly lies in the southern division of the United States Court for the District of Nevada pursuant to 28 U.S.C. §1391(b)(2).

**EXHAUSTION OF ADMINISTRATIVE REMEDY**

4.  On or about April 30, 2021, Plaintiff initiated the process of filing a Charge of Discrimination against her employer, the Defendant named in this action with the Nevada Equal Rights Commission ("**NERC**") wherein she alleged discrimination based on disability and retaliation.

5.  On or about May 12, 2021, Plaintiff received her Notice of Right to Sue from the Equal Rights Commission.

6.  This action is timely filed pursuant to 42 U.S.C. § 2000e-5(f).

7.  Plaintiff has exhausted her administrative remedy on all claims pled hereunder prior to filing this action with this Court.

**GENERAL ALLEGATIONS**

8.  Plaintiff incorporates all of the allegations in the preceding paragraphs as though fully set forth herein.

9.  Plaintiff is a United States citizen and has been a resident of Nye, Nevada since 2005.

10. Defendant CoreCivic, Inc. d/b/a Nevada Southern Detention Center ("CoreCivic" or "Defendant") is a foreign corporation which conducts business in Nye County, Nevada, as it owns and operates a private prison in Nye County.

11. Plaintiff was hired on or about November 12, 2019, as a Correctional Officer for Defendant.

12. She was in training until December 16, 2019.

13. Plaintiff's first day of work was December 17, 2019, and she worked in Nevada until being sent to Montana on a temporary assignment.

14. On or about January 3, 2020, while on the job working for Defendant, Plaintiff fell off a ladder while doing a "roof check" and broke both legs.

15. Plaintiff was hospitalized on or about January 3, 2020, in Great Falls, MT.

16. Shortly thereafter, while still in the hospital in Great Falls, MT, on January 6, 2020, Plaintiff had surgery of both of her legs to repair the damage.

17. On or about January 8, 2020, Plaintiff began physical therapy and rehabilitation for her injuries.

18. On or about January 13, 2020, Plaintiff returned to Pahrump, NV to recover and continue to do physical therapy.

19. From approximately beginning of January until March 2020, Plaintiff was in a wheelchair because she was unable to put any weight on her legs, which even resulted in her having to remodel her bathroom.

20. Plaintiff returned to work on light duty on or about May 18, 2020.

21. Plaintiff was put in the warehouse with approximately fifteen male inmates and her job was to ensure the inmates performed their job functions and were not stealing.

22. Plaintiff performed all of her job responsibilities in this position and worked well with her supervisor, Ms. "Downey," and the others in the warehouse.

23. On or about June 25, 2020, Ms. Sawtelle hired an attorney to represent her in her workers compensation case.

24. Plaintiff noticed an immediate change in attitudes toward her once she retained counsel.

25. On or about August 3, 2020, Warden Brian Koehn instructed Plaintiff to work with the investigators to confirm adherence to Covid protocols, despite this not being directly part of her job

26. On or about August 18, 2020, Plaintiff was released to work by Dr. James Manning, her treating physician.

27. On or about September 2, 2020, Plaintiff got a call from Captain Henderson, who, upon information and belief, told her that the Warden instructed that she report to the laundry room the following morning at 5:00 A. M.

28. Plaintiff reported the following morning, September 3, 2020, as instructed and throughout the day confirmed to both Captain Henderson and Assistant Warden Pamela Lauer that she was physically able to handle the duties and responsibilities of working in the laundry room.

29. Captain Henderson confirmed to Plaintiff that she would be offered the position in the laundry room and congratulated her on receiving the promotion.

30. However, after over two weeks, on or about September 18, 2020, Plaintiff received a letter stating: "The employer has reported that they will not be able to accommodate your client with permanent light/modified duty per the restrictions of treating doctor Manning per the FCE."

31. The letter also advised Plaintiff of three counsellors for vocational rehabilitation.

32. On or about September 24, 2020, Plaintiff met with Ms. Lauer, who informed her that Defendant could not accommodate Plaintiff because it was 'unsafe' for her to work in the laundry with three female inmates.

33. A confused Plaintiff inquired as to why working with three female inmates in the laundry room was more dangerous than working in the warehouse with fifteen male inmates.

34. Plaintiff never received a response to her inquiry.

35. On or about September 30, 2020, Defendant's investigator into the workers compensation claim, Mr. "Mirtich," and an HR Assistant, Mr. "Caggiano," spoke to Plaintiff regarding her employment with Defendant.

36. Upon information and belief, Mirtich and Caggiano instructed Plaintiff to submit a resignation letter.

37. Plaintiff was confused at the request and inquired as to why she would need to submit a resignation letter since she did not plan or want to resign and expressed that she wanted to continue working for Defendant.

38. Plaintiff further expressed that she had been working every day since returning in May and that has fully satisfied all tasks and roles assigned to her by Defendant.

39. Nevertheless, upon information and belief, Mirtich and Caggiano replied to Plaintiff that Defendant could not find a position for her and that she could not start vocational school until she submitted a letter of resignation that started her last date.

40. At their direction, Plaintiff did so on September 30, 2020.

41. Upon information and belief, that very same day, September 30, 2020, Plaintiff not only protested her signing of the resignation letter, but she also made her revocation of the letter clear immediately thereafter.

42. In addition, after speaking with her workers compensation attorney, on or about October 5, 2020, Plaintiff's workers compensation attorney sent Defendant a letter that clearly revoked the resignation letter as Plaintiff did not want to resign, and rather that she wished to return to her position in the laundry room or transition into vocational rehabilitation.

43. Plaintiff further requested that the proper medical separation take place since she would not resign.

44. Finally, Plaintiff reported to Plaintiff that she was being made to work outside of her restrictions and that Defendant should stop doing so.

45. Thereafter, Plaintiff went back to work in the laundry position.

46. Plaintiff attempted several times to contact Debra Shull, the head of HR, regarding her work at Defendant and starting vocational school.

47. On or about October 13, 2020, Ms. Shull contacted Plaintiff and, upon information and belief, instructed Plaintiff to not return to work the next day, that way Plaintiff would be able to start vocational school.

48. Plaintiff replied that she was going to speak to her attorney first, and if she did not hear back from her attorney, then she would return to work the next day.

49. Plaintiff reported to work the following day, October 14, 2020, where she was terminated by Ms. Shull and Ms. Lauer.

50. Plaintiff was terminated because, ostensibly, there were no positions available

1  for which she qualified that also accommodated her permanent restrictions.

2  51. However, Plaintiff was able to be accommodated in the laundry position, a job
3  she had been already doing for some time.

4  52. Moreover, there were, upon information and belief, other positions in which
5  Plaintiff was qualified to do and which are commensurate with her light duty restrictions and
6  medical restrictions.

7  53. Plaintiff was in constant communication with Defendant regarding her workers
8  compensation claim and the injuries and limitations that arose out of those injuries.

9  54. Defendant's improper termination of Plaintiff constitutes improper retaliation
10 for her workers compensation claim.

11 55. Upon information and belief, Defendant acted toward Plaintiff with an intent to
12 discriminate against her based on her disability.

13 56. Upon information and belief, Defendant unlawfully retaliated against Plaintiff
14 for submitting a complaint of disability discrimination with the general manager. Ms. Lauer.

## FIRST CAUSE OF ACTION

**(Discrimination Based on Disability in violation of State, NRS 613.330 *et. seq.*, and Federal Statutes, 42 U.S.C. ch. 126 § 12101 *et seq*.)**

18 57. Plaintiff incorporates all of the allegations in the preceding paragraphs as though
19 fully set forth herein.

20 58. The Americans with Disabilities Act, 42 U.S.C. § 12101, *et seq.,* prohibits
21 employers from discriminating against qualified individuals because of a disability "in regard
22 to job application procedures, the hiring, advancement, or discharge of employees, employee
23 compensation, job training, and other terms, conditions, and privileges of employment." 42
24 U.S.C. § 12112.

25 59. At all relevant times, Plaintiff had a qualifying disability that caused mobility
26 impairments and weight limitations on lifting objects after Plaintiff broke both of her legs.

27 60. Because Plaintiff's leg injuries limit at least one of Plaintiff's major life
28 activities, Plaintiff is an individual with a disability under the ADA.

61. Plaintiff was fully qualified to continuing working for Defendant and could perform the essential functions of the position.

62. Defendant is a covered employer to which the ADA applies.

63. Defendant as an employer is subject to Nevada and federal statutes prohibiting discrimination and has a legal obligation to provide Plaintiff with a work environment free from discrimination and harassment.

64. Defendant refused to take reasonably adequate steps to prevent discrimination against Plaintiff by failing to honor the promotion that she was given as well as for failing to accommodate her in the position that she not only could fully perform, but she was already working in that position.

65. Defendant told Plaintiff that it was unsafe for her to work with three female inmates, when she had been already working with fifteen male inmates, and as such, Defendant's actual reason was that they did not want to accommodate her because of her disability.

66. No other similarly situated persons, not of Plaintiff's protected class were subject to the same or substantially similar conduct.

67. Plaintiff suffered adverse economic impact due to her constructive discharge.

68. Plaintiff was embarrassed, humiliated, angered and discouraged by the discriminatory actions taken against her.

69. Plaintiff suffered compensable emotional and physical harm, including but not limited to, headaches, sleeplessness, anxiety and depression resulting from this unlawful discrimination by her employer.

70. Plaintiff is entitled to be fully compensated for her emotional disturbance by being forced to endure this discrimination.

71. Plaintiff suffered damages in an amount deemed sufficient by the jury.

72. Plaintiff is entitled to an award of reasonable attorney's fees.

73. Defendant is guilty of oppression, fraud or malice, express or implied as Defendant knowingly and intentionally discriminated against Plaintiff because of her disability.

74. Therefore, Plaintiff is entitled to recover damages for the sake of example, to deter other employers from engaging in such conduct and by way of punishing the Defendant in an amount deemed sufficient by the jury.

## SECOND CAUSE OF ACTION

**(Retaliation in violation of State, NRS 613.340, and Federal Statutes, 42 U.S.C. §12203(a) and 42 U.S.C. §2000e-3(a))**

75. Plaintiff incorporates all of the allegations in the preceding paragraphs as though fully set forth herein.

76. In violation of 42 U.S.C. §12203(a), 42 U.S.C. §2000e-3(a), and NRS 613.340, Defendant retaliated against Plaintiff after she complained of acts which she reasonably believed were discriminatory.

77. In violation of NRS 613.340, Defendant retaliated against Plaintiff after she filed a workers compensation claim regarding the onsite injury she experienced while working for Defendant.

78. There may be more detrimental acts of which Plaintiff is unaware which may also constitute retaliation in that it harmed Plaintiff.

79. The actions and conduct by Defendant constitute illegal retaliation which is prohibited by federal and state statutes.

80. Plaintiff suffered damages in an amount deemed sufficient by the jury.

81. Plaintiff is entitled to an award of reasonable attorney's fees.

82. Defendant is guilty of oppression, fraud, or malice, express or implied, because Defendant knowingly and intentionally retaliated against Plaintiff because she submitted a complaint of disability discrimination with the general manager.

83. Therefore, Plaintiff is entitled to recover damages for the sake of example, to deter other employers from engaging in such conduct and by way of punishing the Defendant in an amount deemed sufficient by the jury.

/ / /

/ / /

## THIRD CAUSE OF ACTION

**(Wrongful Termination in Violation of Public Policy; Retaliatory Discharge for Filing a Workers' Compensation Claim)**

84. Plaintiff incorporates all of the allegations in the preceding paragraphs as though fully set forth herein.

85. In Nevada, to establish a prima facie case of wrongful termination in violation of public policy, a plaintiff must demonstrate: (1) that he engaged in "protected activity;" (2) an adverse employment action; and (3) a causal link between the "protected activity" and the adverse employment action. *See Allum v. Valley Bank*, 114 Nev. 1313, 1319-20 (1998).

86. In Nevada, defendants are liable for retaliatory discharge for filing a workers' compensation claim, wherein plaintiff demonstrates that: (1) he filed a workers' compensation claim, (2) he was terminated from employment, and (3) a causal link existed between the termination and the workers' compensation claim. *See Hansen v. Harrah's*, 100 Nev. 60 (1984).

87. Defendant retaliated against Plaintiff after she filed a workers compensation claim regarding the onsite injury she experienced while working for Defendant, which is a protected activity.

88. After Plaintiff filed her workers compensation claim, she was refused an accommodation after being promised one, and then shortly thereafter, she was terminated as Defendant claimed that they could not find a position for her.

89. After that determination, Defendant then terminated Plaintiff by forcing her to sign a resignation letter in order for her to begin her vocational training, which never occurred.

90. The actions and conduct by Defendant constitute illegal retaliation which is prohibited by Nevada common law and against public policy.

91. Plaintiff suffered damages in an amount deemed sufficient by the jury.

92. Plaintiff is entitled to an award of reasonable attorney's fees.

93. Defendant is guilty of oppression, fraud, or malice, express or implied, because Defendant knowingly and intentionally retaliated against Plaintiff because she submitted a complaint of disability discrimination with the general manager.

94. Therefore, Plaintiff is entitled to recover damages for the sake of example, to deter other employers from engaging in such conduct and by way of punishing the Defendant in an amount deemed sufficient by the jury.

## FOURTH CAUSE OF ACTION

### (Intentional/Negligent Infliction of Emotional Distress)

95. Plaintiff incorporates all of the allegations in the preceding paragraphs as though fully set forth herein.

96. Defendant's conduct toward Plaintiff was extreme and outrageous and caused significant emotional harm, headaches, sleeplessness and various physical and mental distress.

97. Defendant's conduct was extreme, outrageous, and undertaken with either intent or reckless disregard for causing Plaintiff emotional distress.

98. Defendant had a duty to refrain from engaging in discriminatory, hostile and retaliatory acts as described above.

99. Defendant breached that duty.

100. Defendant's intentional or negligent conduct was the legal, actual, proximate cause of Plaintiff's extreme and/or severe emotional distress by engaging in the conduct described herein.

101. Defendant must pay damages in an amount to be determined at trial for emotional pain, suffering, inconvenience, mental anguish and loss of enjoyment of life because they engaged in illegal actions.

102. Because Defendant is guilty of oppression, fraud, or malice, express or implied, Defendant must pay Plaintiff an additional amount for the sake of example and by way of punishment.

103. Plaintiff has had to obtain the services of an attorney to protect her rights and secure compensation for the damages incurred as a result of these violations and therefore, she is entitled to recover reasonable attorney's fees against Defendant.

/ / /

/ / /

**WHEREFORE,** Plaintiff prays this court for:

    a. A jury trial on all appropriate claims;

moreover, to enter judgment in favor of the Plaintiff by:

    b. Awarding Plaintiff an amount sufficient to fully compensate her (including tax consequences) for all economic losses of any kind, and otherwise make her whole in accordance with Title VII, the ADA, and state claims;

    c. General damages;

    d. Special damages;

    e. An award of compensatory and punitive damages to be determined at trial;

    f. Liquidated damages;

    g. Pre and post-judgment interest;

    h. An award of attorney's fees and costs; and

    i. Any other relief the court deems just and proper.

Dated this 10th Day of August, 2021.

**HKM EMPLOYMENT ATTORNEYS, LLP**

/s/ Jenny L. Foley
**JENNY L. FOLEY, Ph.D., Esq.**
Nevada Bar No. 9017
1785 East Sahara, Suite 300
Las Vegas, Nevada 89104
Tel: (702) 577-3029
Fax: (702) 625-3893
E-mail: jfoley@hkm.com
*Attorney for Plaintiff*